IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Case No._____ |
| | ) |
| | ) |
| | ) |
| COMPREHENSIVE AUTO RESOURCES | ) |
| COMPANY, INC., SPECIALIZED DEALER | ) |
| SOLUTIONS, LLC, and SPECTRUM | ) |
| AUTOMOTIVE HOLDINGS CORP., | ) |
| | ) |
|    Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Admiral Insurance Company ("Admiral") brings this complaint seeking a declaration of the parties' rights and obligations under a contract of insurance and in support thereof states as follows:

**NATURE OF THE SUIT**

1. This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332.

2. An actual and justiciable controversy exists between Admiral and the Defendants. This action will resolve a dispute as to whether a policy of insurance issued by Admiral to Defendant Comprehensive Auto Resources Company, Inc. ("CARco") affords coverage in connection with an underlying arbitration proceeding.

**PARTIES, JURISDICTION, AND VENUE**

3. Plaintiff Admiral is a Delaware corporation with its principal place of business in Scottsdale, Arizona. Admiral is a citizen of Delaware and Arizona..

4. Defendant CARco is a citizen of Pennsylvania as it is a Pennsylvania corporation with its principal place of business in Exton, Pennsylvania.

5. Defendant Specialized Dealer Solutions, LLC ("SDS") is a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida. Plaintiff has conducted a reasonable inquiry into publicly-available information to determine the membership of SDS and the location and citizenship of the SDS members and has found nothing identifying the SDS members or connecting SDS or its members to Arizona or Delaware. Therefore, upon information and belief following a reasonable investigation, none of the members of SDS are citizens of Arizona or Delaware.

6. Defendant Spectrum Automotive Holdings Corp. ("Spectrum") is a citizen of New Jersey as it is a New Jersey corporation with its principal place of business in Fairfield, New Jersey. (Spectrum, CARco and Admiral are collectively referred to throughout as the "Parties").

7. There is complete diversity of the Parties and the amount in controversy, including potential costs of defense, exceeds $75,000. Jurisdiction exists under 28 U.S.C. § 1332.

8. Venue is appropriate in this district. The events giving rise to this insurance coverage dispute took place in whole or in part in this District and Defendant CARco is a resident of this District.

## FACTUAL BACKGROUND

### A. The Arbitration Demand

9. SDS and Spectrum (collectively "Claimants") have filed a Demand for Arbitration against CARco with the American Arbitration Association (the "Arbitration Demand"). See Exhibit A.

10. According to the Statement of Claim prepared by Claimants in support of the Arbitration Demand, the parties' dispute concerns a Producer's Agreement entered on or about June 18, 2018, between CARco and SDS (hereinafter, the "Agreement"). See Exhibit B.

11. CARco is a provider of various automotive dealer/lender insurance products and services. As part of its services, CARco adjusts claims for its dealers and customers.

12. Claimants allege that, per the Agreement, SDS (referred to in the Agreement as the "Producer") is required to put forth its best efforts to produce qualified business to CARco for enrollment, registration or application with the products and services offered by or through CARco.

13. Claimants allege that the Agreement's payment terms were memorialized by and given further definition through the parties' discussions, writings and course of dealing.

14. Claimants allege that the Agreement included an agreement by CARco to pay SDS a commission of $15.00 per unit (with limited exceptions) for all applications, enrollments, and registrations resulting from business generated by customers brought by SDS to CARco, including JM&A Group ("JM&A") and Assurant Dealer Services ("Assurant").

15. Claimants allege that commissions were payable to SDS for as long as CARco continued to receive a benefit from the business relationships established for CARco by SDS.

16. Claimants allege that, in or about early November 2024, CARco proposed a $5.00 reduction in commissions payable to SDS for the JM&A business.

17. SDS claims that it did not consent to this proposed change in the Agreement's payment terms.

18. Claimants further allege that, on or about February 14, 2025, CARco provided a list of "1-2025 commissions" to SDS, which showed that, as of December 1, 2024, JM&A account commissions were being paid at $10.00 rather than the agreed upon rate of $15.00.

19. Claimants allegedly learned that CARco had also reduced the commissions due on the Assurant and American Financial and Automotive Services ("AFAS") accounts from $15.00 to $10.00.

20. Claimants allege that SDS immediately reached out to the highest executive and legal levels of CARco to object to the reduction in commissions, to provide notice of CARco's breach of the Agreement, and to demand that the CARco immediately pay SDS all shorted funds and readjust all current and future underpaid commissions to the agreed upon amount of $15.00.

21. Claimants also allege that, by correspondence dated February 25, 2025, CARco, advised SDS that CARco was exercising its option to terminate the Agreement.

22. Claimants allege that the February 25, 2025 termination letter also stated that, after the effective date of termination, CARco would no longer accept any new contracts from SDS, but that CARco would continue to administer all products sold prior to the effective date of the termination, through the lifetime of those product agreements.

23. Claimants allege that, subsequent to the receipt of the notice of termination, CARco stopped paying commissions altogether on the JM&A, Assurant and AFAS accounts, starting with business written on April 1, 2025.

24. According to Claimants, by mid-September 2025, the total amount owed by CARco in underpaid and unpaid commissions is at least $1.6 million, with additional damages continuing to accrue on a monthly basis.

25.     It is claimed by Claimants that they filed their Arbitration Demand after multiple demands for payment went unheeded.

26.     Count One of the Claimants' Arbitration Demand asserts a claim for breach of contract.

27.     It is claimed that CARco breached the Agreement by reducing and then withholding completely the compensation due to SDS for the JM&A, Assurant and AFAS accounts without SDS's consent.

28.     It is claimed that CARco also breached the Agreement by both underpaying and then failing to pay completely the commissions due and owing to SDS under the Agreement for the JM&A, Assurant and AFAS business at the agreed rate.

29.     Count Two of the Claimants' Arbitration Demand asserts a claim for breach of implied contract.

30.     It is alleged in the alternative that the parties had an implied contract in fact, based on the parties' actual conduct and course of dealing, which has the same legal effect as any other contract.

31.     Claimants allege that, pursuant to the parties' implied contract, SDS agreed to use its efforts to produce business for enrollment, registration or application with CARco of its product and service offerings, and CARco agreed to pay SDS a commission per unit for all applications, enrollments, and registrations resulting from the customers produced by SDS.

32.     Claimants allege that CARco breached the implied agreement by unilaterally reducing and then withholding completely the compensation due to SDS for the JM&A, Assurant and AFAS accounts and underpaying and failing to pay completely commissions due and owing to SDS under the implied agreement for those accounts.

33. Count Three of the Claimants' Arbitration Demand asserts a claim for breach of implied covenant of good faith and fair dealing.

34. It is claimed that CARco breached the covenant of good faith and fair dealing in the Agreement by unilaterally reducing and then withholding completely the compensation due to SDS for the JM&A, Assurant and AFAS accounts without SDS's consent and by underpaying and/or failing to pay completely commissions due and owing to SDS under the Agreement for those accounts at the agreed rate.

35. Count Four of the Claimants' Arbitration Demand asserts a claim for unjust enrichment as an alternative to their breach of contract claims.

36. It is alleged that SDS has conferred a valuable benefit on CARco, that CARco accepted the benefit of business produced by SDS, and that CARco has received substantial revenue as a result.

37. It is claimed that, as long as CARco maintains the customer relationships produced by SDS, CARco will continue to profit from the business that SDS has referred.

38. Claimants allege that CARco has failed and/or refused to pay SDS what is reasonably owed to SDS and that it would be inequitable for CARco to retain the valuable benefit that has been conferred by SDS without payment of adequate value.

39. Claimants allege that SDS is entitled to full restitution of the amounts underpaid and unpaid by CARco.

40. Count Five of the Claimants' Arbitration Demand asserts a claim for promissory estoppel.

41. It is claimed that CARco made a promise to SDS that it would pay SDS a commission per unit for all applications, enrollments, and registrations resulting from the customers produced for CARco by SDS's efforts.

42. Claimants allege that SDS reasonably expected that it would continue to be paid commissions as it had since the inception of the parties' business relationship.

43. Claimants allege that CARco should have realized that SDS would rely on CARco's promises in making its decision to refer business to CARco.

44. It is claimed that SDS was induced to refer valuable business opportunities to CARco, but has suffered a substantial detriment by not being adequately compensated for its referrals and services.

45. It is claimed that a failure to enforce CARco's promises would be unjust and can be avoided only by enforcing the promises made to SDS.

46. Claimants allege in each Count that CARco's actions have caused them to sustain damages of at least $1.6 million as of the date of the filing of their Statement of Claim, exclusive of interests and costs, and not including future commissions owed to SDS.

47. According to their requests for relief, Claimants seek compensatory damages plus interest; an alternative award of restitution and or other equitable damages in the same amount, plus interest; a declaration that CARco is obligated to continue to make commission payments to SDS and awarding Claimants future commissions at the rate of $15.00 for each product/service that was sold to a customer that SDS produced for CARco for as long as sales to the referred customer occur; an award of attorney's fees and arbitration costs; and an award of such other and further relief as shall be deemed just and reasonable.

### B. Notice of Claim

48. Claimants' Statement of Claim states that following a February 14, 2025 communication from CARco, SDS immediately reached out to CARco to object to the unilateral reduction in commissions, provide notice of CARco's breach of the Agreement, and demand that CARco (i) immediately pay SDS all shorted funds withheld from December 1, 2024, and (ii) readjust all current and future underpaid commissions to the agreed upon amount of $15.00.

49. First notice of Claimants' claims and demand for payment was not provided to Admiral, however, until after Claimants filed their Arbitration Demand in September 2025.

## II. The Admiral Policy

50. Admiral issued Policy No. EO000024562-12 to CARco for the policy period of May 26, 2025 to May 26, 2026 (the "Admiral Policy"). See Exhibit C, a copy of the Admiral Policy.

51. The Admiral Policy is an Insurance Agents and Brokers Professional Liability Policy which affords professional liability coverage on a claims-made and reported basis in accord with the policy's terms, conditions and exclusions.

52. As stated in the Declarations, the Named Insured's Business is described as "Solely in the performance as an insurance agency limited to the sales of automotive related insurance, for others for a fee."

53. The coverage afforded by the Admiral Policy is subject to limits of liability of $1,000,000 per Claim and a $2,000,000 Aggregate. The coverage is also subject to a $15,000 deductible which applies on a per claim basis and excludes Claim Expenses.

54. The main coverage form in the Admiral Policy is Form EO 14 00 08 24 which sets forth the insuring agreement as follows:

8

    I.    INSURING AGREEMENTS
        A.    PROFESSIONAL LIABILITY

> We will pay on behalf of the Insured those amounts which the Insured is legally obligated to pay as Damages caused by a Professional Incident taking place within the Policy Territory and subsequent to the Retroactive Date and prior to the expiration or termination date of this Policy, for which a Claim is first made against the Insured during the Policy Period and reported to us in writing during the Policy Period or any applicable extended reporting period, as described in SECTION VI. EXTENDED REPORTING PERIOD; provided that prior to the inception date of this Policy, no Insured knew, nor could have reasonably foreseen, that the Professional Incident might result in a Claim.

See Exhibit C at Form EO 14 00 08 24.

55. Coverage under the Admiral Policy is afforded in accord with a number of applicable terms, definitions and exclusions, including but not limited to the following (quoted in pertinent part):

    II.    DEFINITIONS

        \*    \*    \*

        E.    Claim means:
            1.    a written demand received for money, services, non-monetary relief or injunctive relief by any Insured resulting from a Professional Incident;
            2.    Service of Suit or arbitration proceedings against an Insured resulting from a Professional Incident.

        \*    \*    \*

        P.    Professional Incident means:
            1.    Personal Injury committed by the Insured in the rendering of or failure to render Professional Services by the Insured or a person acting under the Insured's direction, control or supervision and for whose acts, errors or omissions the Insured is legally liable; or
            2.    a negligent act, error or omission in the rendering of or failure to render Professional Services by the Insured or a person acting under the Insured's direction, control or supervision and for whose acts, errors or omissions the Insured is legally liable.

        All Professional Incidents that are logically or causally connected will be deemed one Professional Incident that, for the purpose of determining coverage under this Policy, occurred at the time of the earliest act, error or omission.

   Q.   Professional Services means services performed by an Insured for others for a fee, commission or other consideration involving specialized training, knowledge and skill while in the pursuit of the business stated in the Declarations.

\*   \*   \*

V.   **EXCLUSIONS**

This Policy does not apply to:

   B.   Intentional Acts

        Any Claim based upon or arising out of, in whole or in part, directly or indirectly, a wrongful, dishonest, fraudulent, criminal, malicious or intentional act if a final, non-appealable judgment or adjudication adverse to the Insured establishes such a wrongful, dishonest, fraudulent, criminal, malicious or intentional act.

        This exclusion does not apply to Claim Expenses incurred in defending any such Claim alleging the foregoing until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against any Insured, or admission by an Insured, establishing such wrongful, criminal, dishonest, fraudulent or malicious conduct or a plea of nolo contendere or no contest regarding such conduct, at which time the Named Insured shall reimburse us for all Claim Expenses incurred defending the Claim and we shall have no further liability for Claim Expenses.

        This exclusion does not apply to any liability of the Named Insured or any Insured that did not personally participate in or personally commit the wrongful, dishonest, fraudulent, criminal or malicious act, if coverage would otherwise be afforded by this Policy for the resulting Damages.

   \*   \*   \*

   J.   Fee Disputes

    any Claim based upon or arising out of, in whole or in part, directly or indirectly, fee disputes;

    This exclusion, however, shall not apply to an otherwise covered Professional Incident.

  \*  \*  \*

L  Prior Knowledge

    \*  \*  \*

  2.  Any actual or alleged Professional Incident, fact, circumstance, subject, decision, transaction, situation or cause, of which prior to the effective date of this Policy, any Insured knew, or could have reasonably foreseen, that the Professional Incident fact, circumstance, subject, decision, transaction, situation or cause could reasonably have been expected to give rise to a Claim or Suit;

    \*  \*  \*

See Exhibit C at Form EO 14 00 08 24.

## Count I
### Declaratory Judgment Regarding Lack of Coverage Based on the Lack of a Claim for Damages Caused by a Professional Incident

  56.  Admiral adopts and realleges Paragraphs 1 through 55 above as and for Paragraph 56 as though restated herein.

  57.  When coverage is otherwise available, the Admiral Policy affords coverage for amounts which CARco is legally obligated to pay as "Damages" caused by a Professional Incident.

  58.  As defined in relevant part, "Professional Incident" means a negligent act, error or omission in the rendering of or failure to render "Professional Services" by CARco.

  59.  "Professional Services" means services performed by CARco for others for a fee, commission or other consideration involving specialized training, knowledge and skill while in the pursuit of the business stated in the Declarations.

60. As stated in the Declarations, CARco's business is described as activities "solely in the performance as an insurance agency limited to the sales of automotive related insurance, for others for a fee."

61. To be covered under the Admiral Policy, the claims asserted against CARco must seek damages arising from a negligent act, error or omission in the rendering of or failure to render services performed by CARco for others for a fee, commission or other consideration involving specialized training, knowledge and skill concerning automotive related insurance.

62. Claimants allege in each Count of the Arbitration Demand that CARco's actions have caused them to sustain damages of at least $1.6 million as of the date of the filing of their Statement of Claim, exclusive of interests and costs, and not including future commissions owed to SDS.

63. According to their requests for relief, Claimants seek compensatory damages from CARco plus interest; an alternative award of restitution and or other equitable damages in the same amount.

64. The Claimants' damages arise from CARco business decisions relating to its contractual agreement(s) to pay Claimants for services rendered by the Claimants for CARco.

65. The Claimants' damages do not arise from alleged negligent acts or omissions by CARco in the rendering or failure to render "professional services" to Claimants.

66. Therefore, the Admiral Policy affords no coverage to CARco in relation to the claims asserted in the Arbitration Demand.

WHEREFORE, for the foregoing reasons, Admiral respectfully requests that the Court grant judgment in Admiral's favor and enter an order declaring that:

    a.    Admiral has no duty to defend CARco under the Admiral Policy in relation to the Arbitration Demand;

    b.    Admiral has no duty to indemnify CARco under the Admiral Policy in relation to the Arbitration Demand; and

    c.    Awarding Admiral any such other and further relief that the Court deems appropriate.

## Count II
### Declaratory Judgment Regarding Lack of Coverage Based on Claim First Made Prior to the Policy Period

67.    Admiral adopts and realleges Paragraphs 1 through 55 above as and for Paragraph 67 as though restated herein.

68.    The claims asserted in the Arbitration Demand arise from communication(s) with the highest executive and legal levels of CARco in February and March 2025.

69.    Other allegedly wrongful acts occurred in or by April 2025 with the cessation of commission payments altogether.

70.    CARco knew about Claimants objections to CARco's conduct and received a demand for payment prior to the inception of policy period on May 26, 2025.

71.    As provided by the Professional Liability insuring agreement, coverage under the Admiral Policy only applies to Damages caused by a Professional Incident for which a Claim is first made against CARco during the Policy Period and reported to Admiral in writing during the Policy Period.

72.    Based on the terms of the insuring agreement, the Admiral Policy does not apply to any Claim made by Claimants for which CARco received a written demand for money, services, non-monetary relief or injunctive relief prior to the May 26, 2025 effective date of the policy.

73. Therefore, the Admiral Policy affords no coverage to CARco in relation to the claims asserted in the Arbitration Demand.

WHEREFORE, for the foregoing reasons, Admiral respectfully requests that the Court grant judgment in Admiral's favor and enter an order declaring that:

a. Admiral has no duty to defend CARco under the Admiral Policy in relation to the Arbitration Demand;

b. Admiral has no duty to indemnify CARco under the Admiral Policy in relation to the Arbitration Demand; and

c. Awarding Admiral any such other and further relief that the Court deems appropriate.

**Count III**
**Declaratory Judgment Regarding Lack of Coverage Based on Prior Knowledge**

74. Admiral adopts and realleges Paragraphs 1 through 55 above as and for Paragraph 74 as though restated herein.

75. The claims asserted in the Arbitration Demand arise from communication(s) with the highest executive and legal levels of CARco in February and March 2025.

76. Other allegedly wrongful acts occurred in or by April 2025 with the cessation of commission payments altogether.

77. CARco knew about Claimants objections to CARco's conduct and received a demand for payment prior to the inception of policy period on May 26, 2025.

78. As provided by the Professional Liability insuring agreement, coverage under the Admiral Policy only applies to Damages caused by a Professional Incident for which a Claim is first made against the Insured during the Policy Period and reported to us in writing during the Policy Period.

79. In addition, pursuant to Exclusion L., coverage will not be available under the Admiral Policy for any Damages relating to any actual or alleged Professional Incident, fact, circumstance, subject, decision, transaction, situation or cause, of which prior to the effective date of this Policy, any Insured knew, or could have reasonably foreseen, that the Professional Incident fact, circumstance, subject, decision, transaction, situation or cause could reasonably have been expected to give rise to a Claim or Suit.

80. CARco knew or could have reasonably foreseen prior to the effective date of the Admiral Policy, that the Professional Incident fact, circumstance, subject, decision, transaction, situation or cause underlying Claimants' Claim could reasonably have been expected to give rise to a Claim or Suit against CARco.

81. Therefore, the Admiral Policy affords no coverage to CARco in relation to the claims asserted in the Arbitration Demand.

WHEREFORE, for the foregoing reasons, Admiral respectfully requests that the Court grant judgment in Admiral's favor and enter an order declaring that:

a. Admiral has no duty to defend CARco under the Admiral Policy in relation to the Arbitration Demand;

b. Admiral has no duty to indemnify CARco under the Admiral Policy in relation to the Arbitration Demand; and

c. Awarding Admiral any such other and further relief that the Court deems appropriate.

### Count IV
### Declaratory Judgment Regarding Lack of Coverage for a Fee Dispute

82. Admiral adopts and realleges Paragraphs 1 through 55 above as and for Paragraph 82 as though restated herein.

83. The claims asserted in the Arbitration Demand arise from Claimants' demand for payment for fees owed by CARco in relation to services rendered by the Claimants.

84. As provided by the Professional Liability insuring agreement, coverage under the Admiral Policy only applies to "Damages" caused by a "Professional Incident" for which a "Claim" is first made against the Insured during the Policy Period and reported to Admiral in writing during the Policy Period.

85. In addition, pursuant to Exclusion J., coverage will not be available under the Admiral Policy for any Claim based upon or arising out of, in whole or in part, directly or indirectly, fee disputes.

86. The claims asserted by Claimants stem from the alleged refusal by CARco to pay fees owed to Claimants under the parties' Agreement.

87. Therefore, the Admiral Policy affords no coverage to CARco in relation to the claims asserted in the Arbitration Demand.

WHEREFORE, for the foregoing reasons, Admiral respectfully requests that the Court grant judgment in Admiral's favor and enter an order declaring that:

a. Admiral has no duty to defend CARco under the Admiral Policy in relation to the Arbitration Demand;

b. Admiral has no duty to indemnify CARco under the Admiral Policy in relation to the Arbitration Demand; and

c. Awarding Admiral any such other and further relief that the Court deems appropriate.

### Count V
### Declaratory Judgment Regarding Lack of Coverage for Intentional Acts

88. Admiral adopts and realleges Paragraphs 1 through 55 above as and for Paragraph 88 as though restated herein.

89. The claims asserted in the Arbitration Demand arise from Claimants' demand for payment for fees owed by CARco in relation to services rendered by the Claimants and CARco's breach of the parties' contract.

90. The claims asserted in the Arbitration Demand arise from communication(s) with the highest executive and legal levels of CARco in February and March 2025.

91. Other allegedly wrongful acts occurred in or by April 2025 with the cessation of commission payments altogether.

92. CARco knew about Claimants objections to CARco's conduct and received a demand for payment prior to the inception of policy period on May 26, 2025.

93. As provided by the Professional Liability insuring agreement, coverage under the Admiral Policy only applies to Damages caused by a Professional Incident for which a Claim is first made against the Insured during the Policy Period and reported to us in writing during the Policy Period.

94. Pursuant to Exclusion B., coverage will not be available under the Admiral Policy for any Claim based upon or arising out of, in whole or in part, directly or indirectly, a wrongful, dishonest, fraudulent, criminal, malicious or intentional act if a final, non-appealable judgment or adjudication adverse to CARco establishes such a wrongful, dishonest, fraudulent, criminal, malicious or intentional act.

95. However, Exclusion B. does not apply to Claim Expenses incurred in defending any such Claim until such time as there is a final adjudication, judgment, binding arbitration decision or conviction against any Insured, or admission by an Insured, establishing such wrongful,

dishonest, fraudulent or malicious conduct or a plea of nolo contendere or no contest regarding such conduct, at which time CARco is to reimburse Admiral for all Claim Expenses incurred defending the Claim and Admiral shall have no further liability for Claim Expenses.

96. The claims asserted by Claimants stem from allegedly wrongful, dishonest, fraudulent, or intentional act(s) by CARco in refusing to pay fees owed to Claimants under the parties' Agreement.

97. Therefore, the Admiral Policy affords no coverage to CARco in relation to any amounts which CARco is obligated to pay to Claimants in relation to the claims asserted in the Arbitration Demand.

98. Further, in the event that Admiral was found to have an obligation to provide CARco with a defense in relation that Arbitration Demand, which is disputed, upon the final adjudication, judgment, binding arbitration decision or conviction against any Insured, or admission by an Insured, establishing such wrongful, dishonest, fraudulent or malicious conduct or a plea of nolo contendere or no contest regarding such conduct, CARco would become obligated to reimburse Admiral for all Claim Expenses incurred defending the Claim and Admiral would owe no further liability for Claim Expenses.

WHEREFORE, for the foregoing reasons, Admiral respectfully requests that the Court grant judgment in Admiral's favor and enter an order declaring that:

    a. Admiral has no duty to defend CARco under the Admiral Policy in relation to the Arbitration Demand;

    b. Admiral has no duty to indemnify CARco under the Admiral Policy in relation to the Arbitration Demand;

  c. CARco is required to reimburse Admiral for any Claim Expenses incurred in defending CARco; and

  d. Awarding Admiral any such other and further relief that the Court deems appropriate.

        Respectfully submitted,
        ADMIRAL INSURANCE COMPANY


       By: *s/ Tobin A. Butler*
         Tobin A. Butler, Esquire
         **LITCHFIELD CAVO LLC**
         *An Illinois Limited Liability Partnership*
         PA Attorney I.D. No. 77174
         457 Haddonfield Rd., Suite 200
         Cherry Hill, NJ  08002
         (856) 854-3636
         butler@litchfieldcavo.com

         *Attorneys for Plaintiff Admiral Insurance Company*

Dated:  February 26, 2026